Eric J. Gitig (SBN 307547)
Orlando J. Arellano (SBN 234074)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone:  (213) 689-0404
Facsimile:  (213) 689-0430
Emails:  Eric.Gitig@jacksonlewis.com
         Orlando.Arellano@jacksonlewis.com

Attorneys for Defendant
ALCLEAR, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYONNA TURNER, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>        vs.<br><br>ALCLEAR, LLC, a New York Corporation; and DOES 1-50, inclusive,<br><br>                Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>(Filed concurrently with Declarations of Eric J. Gitig, Cecilia N. Kwok, Thomas J. Stein; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement)<br><br>Complaint Filed:  January 11, 2024 |

/ / /

/ / /

/ / /

/ / /

/ / /

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF TYONNA TURNER, AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant ALCLEAR, LLC ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Sacramento based on the Class Action Fairness Act of 2005 ("CAFA").  In support thereof, Defendant asserts the following:

## <u>SERVICE AND PLEADINGS FILED IN STATE COURT</u>

1.    On January 11, 2024, Plaintiff TYONNA TURNER ("Plaintiff") filed an unverified Class Action Complaint against Defendant in the Superior Court of the State of California for the County of Sacramento, entitled TYONNA TURNER, on behalf of herself and all others similarly situated, Plaintiff, vs. ALCLEAR, LLC, a New York Corporation; and DOES 1-50, inclusive, Defendants, Case No.: 22STCV03573, which sets forth the following seven causes of action: (1) Failure to Pay All Overtime Wages; (2) Meal Period Violations; (3) Rest Period Violations; (4) Failure to Pay All Sick Time; (5) Wage Statement Violations; (6) Waiting Time Penalties; (7) Failure to Reimburse Necessary Business Expenses; and (8) Unfair Competition.   A true and correct copy of the Summons, Complaint, and Notice of Service of Process, and other related court documents received by Defendant's counsel are attached as Exhibit "A" to the Gitig Declaration.  (Declaration of Eric J. Gitig ["Gitig Decl."], ¶ 2, Exhibit "A," ["Complaint"].)

2.    As stated in paragraph 37 of the Complaint, Plaintiff brought this action on behalf of herself and a putative class consisting of "All current and former non-exempt hourly employees who work or worked for Defendant in California during the four years immediately preceding the filing of the Complaint through the date of trial." (*Id.* at ¶ 37.)

3.    On January 18, 2024, Plaintiff served Defendant with a copy of the Summons and Complaint.  (Gitig Decl. at ¶ 3.)

---

CASE NO.:                                    2                NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

4. On February 16, 2024 Defendant filed and served an Answer to the Complaint in the Sacramento Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. A true and correct copy of Defendant's Answer is attached as Exhibit "B" to the Gitig Declaration. (Gitig Decl. at ¶ 4, "Exhibit B," ["Answer"].)

5. As of the date of this Notice of Removal, Exhibits "A" and "B" to the Gitig Declaration constitute all of the pleadings received by Defendant or served by Defendant in this matter. (*Id.* at ¶ 5.)

## TIMELINESS OF REMOVAL

6. This Notice of Removal has been filed within 30 days after Defendant was e-mail served a copy of the Summons and Complaint on January 22, 2024.[1] (*Id.* at ¶ 2.) Therefore, it has been filed within the time-period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received."); *see also* California Code of Civil Procedure § 415.30(b).

## VENUE IS PROPER

7. This action was filed in the Superior Court in and for the County of Sacramento. Thus, venue of this action properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. The Complaint asserts that Plaintiff worked for Defendant in Sacramento County. (Complaint at ¶ 9.)

///

---

[1] February 19, 2024 is a Federal and State Holiday.

CASE NO.:                                  3                  NOTICE OF REMOVAL OF
                                                              ACTION TO THE UNITED
                                                              STATES DISTRICT COURT

## REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT

8.     Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

9.     In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  (28 U.S.C. § 1332(d)(5).)

10.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, and – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendant.  (*See* 28 U.S.C. §§ 1332(d) and 1453.) Further, Defendant is not a State, State official, or other governmental entity.

### A.     The Putative Class Contains More Than 100 Members.

11.     Plaintiff alleges "that the Classes consist of at least one hundred (100) individuals."  (Complaint at ¶ 38.)  Also, Defendant's records identify in excess of 100 individuals including Plaintiff who have been employed by Defendant as non-exempt employees in the State of California during the "Putative Class Period" between January 11, 2020 and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class").   (Declaration of Cecilia N. Kwok ["Kwok Decl."] at ¶ 4.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

### B.     None Of The Named Defendants Are Government Entities.

12.     Defendant is neither a State, a State official, or any other governmental entity. (Declaration of Thomas J. Stein ["Stein Decl."], at ¶ 3.)

C.    **Minimal Diversity Is Satisfied Under CAFA.**

13.    CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14.    Citizenship of the parties is determined by their citizenship status at the action's commencement.  *Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

15.    For individuals, citizenship is determined by a person's domicile.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").  While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship.  *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"; *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).)  Furthermore, a person's intention to remain may be established by his or her place of employment.  *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see*

1    *also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS

2    90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in

3    California are sufficient evidence of his intent to remain in California.").

4        16.    Defendant is informed and believes, as alleged by Plaintiff in her Complaint,

5    that Plaintiff was, at the time this action was commenced, and still is, resident and citizen of

6    the State of California. (Complaint at ¶ 9; Kwok Decl. at ¶ 3.)

7        17.    For purposes of removal under CAFA, the citizenship of a limited liability

8    company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell*

9    *v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v.*

10   *Carefusion Res., LLC,* No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1,

11   2019).) CAFA expressly states that "for purposes of this section .... an unincorporated

12   association or corporation is deemed to be a citizen of the state where it has its principal place

13   of business and under whose laws it is incorporated or organized." (28 U.S.C. § 1332(d)(10).)

14   This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC

15   is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia*

16   *Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

17       18.    With respect to ascertaining a corporation's principal place of business, the

18   United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend,*

19   559 U.S. 77, 80-81 (2010).  Under the nerve center test, a corporation's principal place of

20   business is where a corporation's high-level officers direct, control and coordinate the

21   corporation's activities.  *Id.*  A corporation can only have one "nerve center."  *Id.* at 93-94.

22   In evaluating where a corporation's "nerve center" is located, courts will look to the center

23   of overall direction, control, and coordination of the company and will no longer weight

24   corporate functions, assets, or revenues in each state.  *Id.*

25       19.    At the time Plaintiff filed the Complaint and presently, Defendant has been a

26   limited liability company organized under the laws of the State of Delaware.  (Stein Decl.

27   at ¶ 4.) At all relevant times, Defendant's company headquarters – and thus its principal

28

CASE NO.:                        6              NOTICE OF REMOVAL OF
                                                ACTION TO THE UNITED
                                                STATES DISTRICT COURT

place of business – has been in the State of New York where the majority of Defendant's executive, administrative, financial and management functions are conducted, and from where the majority of Defendant's high-level officers direct, control, and coordinate and control the company's operations and activities. (*Id*.) Accordingly, for purposes of removal under CAFA, Defendant is a citizen of the States of Delaware and New York and is not a citizen of the State of California.

20.    Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States of Delaware and New York.[2] (28 U.S.C. § 1332(d)(2).)

## D.    The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[3]

21.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA: "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all

---

[2]    The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. (28 U.S.C. §§ 1332(d)(2) and 1441(a); *See Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021 (9th Cir. 2007).

[3]    Defendant denies the allegations set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief. Defendant also denies that any of Plaintiff's claims are appropriate for class treatment. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . .").

22.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002) *citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim").  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied.  *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969).

23.    Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation."  *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).  Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs*., 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d

395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

24.     In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States Supreme Court held, like here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554.) On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

25.     Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See e.g., Mendoza v. OSI Indus., LLC,* No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *11-18 (C.D. Cal. Sep. 16, 2022) ("Because Plaintiffs allege a 'policy' of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break

violations per employee per week reasonable … [and also finds Defendant's] assume[d] violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements … reasonable and consistent with Plaintiffs' allegations."); *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

26.    Plaintiff's Complaint does not allege a specific amount in damages. Nevertheless, without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the factual allegations and causes of action set forth in the Complaint[4] conservatively places an aggregate amount in controversy exceeding $5,000,000 exclusive of attorneys' fees, interest, and costs.  Plaintiff's complaint asserts numerous claims for unpaid overtime wages, unpaid meal and rest premium wages, failure to pay all sick time, failure to reimburse necessary business expenses, and failure to timely pay final wages upon separation

---

[4]    *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

(waiting time penalties). Without waiving the right to establish that each claim puts into controversy amounts which would cumulatively be in excess of $5,000,000, Plaintiff's claim for waiting time penalties alone, under Labor Code section 203, puts the amount in controversy over $5,000,000.

27.     The Complaint alleges "Labor Code section § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by Labor Code sections 201 and 202, the employer is liable for penalties in the form of continued compensation up to thirty (30) workdays." (Complaint at ¶ 75.). Plaintiff further alleges "Defendant willfully failed to pay the Waiting Time Subclass for all hours worked, including all overtime wages, sick pay wages, vested vacation pay, and their meal and rest period premiums at the 'regular rate of pay,' before or upon termination or separation from employment with Defendant as required by Labor Code §§ 201 and 202." (*Id.* at ¶ 76). The Complaint goes on to assert that, "[a]s a result, Defendant is liable to the Waiting Time Subclass for waiting time penalties amounting to thirty (30) days wages for Plaintiff and the Waiting Time Subclass pursuant to Labor Code § 203." (*Id.* at ¶ 77.)

28.     During the period from January 11, 2020 until December 12, 2023,[5] over 1,150 full-time Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. (Kwok Decl. at ¶ 4.) The average hourly rate for those employees at the time of separation was $18.48. (Id.) Thus, while Defendant completely denies Plaintiff is entitled to recover any waiting time penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $5,100,480 in controversy in connection with her claim for waiting time penalties ($18.48 average hourly rate x 8 hours/day x 30 days x 1,150 Putative Class Members).

29.     Assuming a 100% violation rate and 30 days of wages is reasonable for purposes of establishing the amount in controversy. *See, e.g., Jauregui v. Roadrunner Transp. Servs.*

---

[5]     This period is the beginning of the 3-year statute of limitations that applies to Labor Code section 203, up to and until 30 days before the filing of the Complaint. *See Pineda v. Bank of America NA*, 50 Cal.4th 1389 (2010).

(9th Cir. 2022) 28 F.4th 989, 993-994 (holding the district court erred in rejecting the defendant's assumption that all former employees were entitled to the full 30 days of waiting time penalties: "The district court did not afford Roadrunner this latitude when analyzing the amount in controversy. As one example, the court rejected Roadrunner's assumption that each terminated employee would have been entitled to the maximum 30-day waiting time penalty because Roadrunner 'provides no evidence' supporting that fact. But it was not unreasonable for Roadrunner to assume that the vast majority (if not all) of the alleged violations over the four years at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty. The fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim."); *Ramos v. Schenker, Inc.*, No. 5:18-cv-01551-JLS-KK, 2018 U.S.Dist.LEXIS 187557, at *7 (C.D.Cal. Nov. 1, 2018) (denying plaintiff's motion to remand and holding: "Whereas assumptions about the regularity and extent of the underlying overtime violations may be fairly contested at this stage, the very nature of a class action complaint for unpaid overtime wages requires Plaintiff to allege that putative class members have not received all wages owed in violation of the law. Therefore, Plaintiff's allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties. This reasoning is shared by other courts in this circuit."); *see, e.g., Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *17-18 (finding the defendant's assumption of a 100% violation rate to be reasonable "because Defendant…need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply") (citation and internal quotation marks omitted).); *Marentes v. Key Energy Servs. Cal.* (E.D.Cal. Feb. 23, 2015, No. 1:13-cv-02067 AWI JLT) 2015 U.S.Dist.LEXIS 21377, at *23 ("Because these wages are alleged to have not been paid, the full thirty-days may be used for each of the putative class members."); *Roth v. Comerica Bank* (C.D.Cal. 2010) 799 F.Supp.2d 1107, 1125-1126 ("The court agrees that Roth's allegations suggest all class members were denied some form of proper compensation during their employment, and

CASE NO.:                                    12                NOTICE OF REMOVAL OF
                                                               ACTION TO THE UNITED
                                                               STATES DISTRICT COURT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that the underpayment was not corrected at end of their employment. Thus, defendants can properly assume that all employees were entitled to maximum waiting time penalties under Labor Code § 203."); *Avila v. Northwood Hosp. LLC* (C.D.Cal. Feb. 5, 2024, No. 2:23-cv-09598-SB-AS) 2024 U.S.Dist.LEXIS 19850, at *11 (denying plaintiff's motion to remand and holding: "Defendant identifies 84 employees who have separated from their employment with Defendant since September 18, 2020. As in *Jauregui*, it is reasonable to assume that all 84 of these employees are entitled to the full 30-day penalty.").

  30. Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class claims for unpaid overtime wages, meal period violations, rest period violations, failure to pay all sick time, wage statement violations, waiting time penalties, and failure to reimburse expenses.  (Complaint at ¶¶ 50, 65, 87, Prayer for Relief.)  The Court must consider and include these fees and costs in determining the amount in controversy. *Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc*., 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted).). Attorney fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more.  *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California,* 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and

encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

31.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,* No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

32.    Thus, while Defendant completely denies Plaintiff is entitled to recover any damages or corresponding attorneys' fees, the Court should consider attorneys' fees of at least $1,275,120, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 28 above in connection with Plaintiff's putative class claim for waiting time penalties. *See, e.g., Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable"

on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

33.    Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set forth in the Complaint, it is plausible that the aggregate amount in controversy in connection with Plaintiff's claims for waiting time penalties and attorneys' fees alone is  over **$6,375,600** which  surpasses the $5,000,000 jurisdictional threshold required under CAFA.[6]

## NOTICE TO ALL PARTIES AND STATE COURT

34.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Sacramento County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

35.    Based on the foregoing, Defendant hereby removes the above-captioned action from the Sacramento County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated:  February 20, 2024          JACKSON LEWIS P.C.

By:    */s/ Eric J. Gitig*

Eric J. Gitig
Orlando Arellano

Attorneys for Defendant
ALCLEAR, LLC

4892-6393-3605, v. 7

---

[6]    As stated above, Plaintiff has alleged 6 other wage claims apart from her Waiting Time Penalties claim under Labor Code section 203, and Defendant reserves its right to bring forth additional evidence to establish the potential damages for those other claims in order to satisfy the amount in controversy under CAFA and will do so if the Court believes it necessary.